UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

NATHANIEL F. HARBERT,

    Plaintiff,

  v.

MS. M. MILLER, Correctional Officer; LT. C. BAUER; LT. R. A. YOUNG; SGT. W. COCHELL; C/O ROLAN; and CPL. JEMMETT,

    Defendants.

Case No. 2:18-cv-00072-YY

OPINION AND ORDER

YOU, Magistrate Judge:

*Pro se* plaintiff, Nathaniel F. Harbert, an inmate in the custody of Two Rivers Correctional Institution ("TRCI"), alleges a civil rights action under 42 U.S.C. § 1983 against prison staff defendants, C/O Marrisa Miller, Lt. Cameron Bauer, Lt. Richard Young, Sgt. William Cochell, Officer Cody Rolan, and Cpl. Trent Jemmett. Plaintiff alleges that defendants subjected him to cruel and unusual punishment and acted with deliberate indifference in violation of the Eighth Amendment while performing a cell extraction on September 23, 2017, by (1) using excessive force, (2) failing to intervene to protect him from the use of excessive force, and (3) failing to properly train correctional officers, which resulted in alleged injuries.

1 – OPINION AND ORDER

Compl., ECF #2. Defendants have filed a motion for summary judgment. ECF #36. For the reasons discussed below, the motion is GRANTED.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citing FRCP 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id.* A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49. A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Cason City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the

non-moving party." *Addisu*, 198 F.3d at 1134.

*Pro se* pleadings are "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "This rule protects the rights of pro se litigants to self-representation and meaningful access to the courts, . . . and is particularly important in civil rights cases." *Pouncil v. Tilton*, 704 F.3d 568, 574-75 (9th Cir. 2012) (citations and quotation marks omitted).

## DISCUSSION

### I. Exhaustion Defense Waived

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires pre-litigation exhaustion and mandates dismissal "when there is no *presuit* exhaustion, even if there is exhaustion while suit is pending." *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005) (emphasis in original) (citation and quotation marks). Since its conception, the PLRA has strengthened the exhaustion requirement such that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citation omitted). "[F]ailure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove in a PLRA case." *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014). It is the defendant's burden "to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172 (citation omitted).

Plaintiff alleges that he filed a grievance with TRCI, but neither party has provided evidence regarding the grievance procedures or any grievance filed by plaintiff. Although exhaustion of administrative remedies is mandatory for prisoners challenging prison conditions, exhaustion must be pleaded and proven as an affirmative defense by the defendant. *See Albino*, 747 F.3d at 1176. Although defendants asserted the PLRA as an affirmative defense in their

3 – OPINION AND ORDER

Answer (ECF #12), they failed to assert it in their motion for summary judgment (ECF #36). Therefore, defendants have waived this defense.

## II. Eighth Amendment Claims

### A. Excessive Force

The Eighth Amendment requires prison officials to provide humane conditions of confinement, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), and extends to the use of excessive force by prison officials. *Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003). While the "settled rule is that the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment," *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citations and quotations marks omitted), not every "malevolent touch" by a prison official implicates the Constitution. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove . . . violates a prisoner's constitutional rights.") (emphasis omitted).

The use of *de minimis* force, so long as it "is not of a sort repugnant to the conscious of mankind," is not an Eighth Amendment concern. *Hudson*, 503 U.S. at 9-10 (citation and quotation marks omitted). The Eighth Amendment only applies to the "narrow class of deprivation involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Id.* at 20. If a prison official used more than *de minimis* force, the inquiry turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."[1] *Id.* at 6-7 (quoting *Whitley*, 475 U.S. at

---

[1] Defendants frame the analysis as involving both an objective and subjective component. Mot. Summ. J. 14, EC #36. However, "a convicted prisoner's excessive force claim under the Eighth Amendment requires a subjective inquiry into 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 788 (9th Cir. 2018) (quoting *Hudson*, 503 U.S. at 7; *see also*

4 – OPINION AND ORDER

320-21). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited. . . ." *Whitley*, 475 U.S. at 319. "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.*

Moreover, "[p]rison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the 'obligation to take reasonable measures to guarantee the safety of the inmates themselves.'" *Id.* at 320 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). "Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations," courts usually afford prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979) (citations omitted).

In his complaint, plaintiff asserts that defendants used excessive force by grabbing his arm and twisting it behind his back, tasering him, kneeing him in the back, punching him in the

---

*Hudson*, 503 U.S. at 8-9 (discussing how objective component of Eighth Amendment analysis is "responsive to contemporary standards of decency," and "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated") (citations and quotations marks omitted); *id.* at 23 (Thomas, J., dissenting (referring to majority's "elimination of the objective component in excessive force cases")); *compare Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (holding that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one").

back of the head five to seven times, slamming his head on a metal frame, and slamming him to the ground, resulting in injury, including ringing in his ears, severe headaches, contusions, forehead bruising, scrapes, and a large lump. Compl. 4, ECF #2. In particular, plaintiff contends that C/O Miller punched him "out of anger," and claims that other defendants could have stopped her and also should have "trained [her] properly in the rules of a cell extraction." *Id.* at 5. However, plaintiff's complaint is unsworn, and he has offered no evidence in response to defendants' motion for summary judgment. *See Celotex*, 477 U.S. at 324 (holding that to withstand defendants' motion for summary judgment, non-moving party "must go beyond the pleadings and by [his] own affidavits or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue for trial").

Moreover, the uncontroverted evidence proffered by defendants establishes that the use of force was applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically for the purpose of causing harm. *Hudson* identifies five factors to be considered in making this determination: (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response. 503 U.S. at 7; *see also Martinez*, 323 F.3d at 1184 (applying these five *Hudson* factors in determining whether inmate was subjected to excessive force under the Eighth Amendment).

Regarding the first factor, plaintiff created the need for defendants' application of force. Both parties agree that the cell extraction was the result of plaintiff's attempted suicide.[2] Compl. 4, ECF #2; Def. Mot. Summ. J. 3, ECF #36. Officer Rolan directed plaintiff to submit to restraints so that he could be escorted to obtain a medical evaluation, but plaintiff refused. Young Decl. ¶ 5, ECF #39. Plaintiff also barricaded his cell door with his mattress and covered the cell floor and himself with soap and water.[3] Miller Decl. ¶ 5, ECF #37.

Second, there was a strong correlation between the need for the force and the amount of force used. Defendants devised a reasonable strategy to remove plaintiff from the cell in order to provide him with medical attention. Young Decl. ¶ 6, ECF #39. Defendants considered the factors at play—specifically, the urgency of plaintiff's medical need; plaintiff's refusal of "numerous verbal directives" to remove the mattress and submit to restraints; plaintiff's placement of the mattress, which obstructed the cell extraction team's view of the cell; the danger posed by the slippery concrete floor; and plaintiff "standing at the back of his cell waving his intake box around and challenging staff." *Id.* ¶ 9. Defendants then exercised non-deadly force, *i.e.*, the electronic shield, to move plaintiff onto his bunk and restrain him. *Id.* The video footage reveals that after defendants entered the cell, plaintiff's continued resistance forced them to hold him down. *Id.*

---

[2] In his complaint, plaintiff states he took "34 Zoloft and 7 naproxen in [a] suicide attempt." Compl. 4, ECF #2.

[3] Oregon Department of Corrections' administrative rules authorize employees to "apply physical force when and to the degree that it reasonably appears necessary . . . (f) to overcome an inmate's physical resistance to a valid order; or (g) to prevent an inmate from injuring or killing himself/herself or other persons." OAR 291-013-0065(1)(f), (g), ECF #39, at 32.

7 – OPINION AND ORDER

Moreover, even though plaintiff was belligerently resisting medical care, defendants had the obligation of ensuring plaintiff's safety. *Id.* ¶ 11 ("Inmate Harbert could not remain in his cell after reporting he had engaged in self harm by swallowing excessive medications and needed to be evaluated by medical personnel."). *See Estelle*, 429 U.S. at 103 (setting the standard for the "government's obligation to provide medical care for those whom it is punishing by incarceration."). Had defendants failed to act, their inaction could have amounted to deliberate indifference to plaintiff's serious medical need. *See Farmer*, 511 U.S. at 831 ("The failure of prison officials to prevent inmate assaults violates the Eighth Amendment . . . if prison officials were 'reckless in a criminal sense,' meaning that they had 'actual knowledge' of a potential danger.").

Third, regarding the injury inflicted, the Ninth Circuit has made the distinction between *de minimis* force exerted and *de minimis* injuries sustained. *See Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991) ("[I]t is not the degree of injury which makes out a violation of the eighth amendment. Rather, it is the use of official force or authority that is 'intentional, unjustified, brutal[,] and offensive to human dignity.'") (citation omitted); *see also Hudson*, 503 U.S. at 7 (describing the *Whitley* standard, "the extent of injury . . . is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' . . . 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur'") (quoting *Whitley*, 475 U.S. at 321). Here, while plaintiff contends that he suffered serious injuries, he has submitted no evidence in support of those claims. Furthermore, as discussed above, the use of force was commensurate with the need for the force and appropriate under the circumstances.

Fourth, corrections officials reasonably perceived a threat based on plaintiff's behavior.

In addition to refusing several directives, plaintiff provokingly waved his intake box and shouted, "Alright, come on motherfuckers!" Miller Decl. ¶ 6, ECF #37. Those are clearly fighting words. Plaintiff also used every tool for aggression that he had at his disposal in order to block the officers' sight, reduce traction for the officers after they entered his cell, and pose a physical threat. Defendants had no reason to believe that upon opening plaintiff's cell door, plaintiff would have submitted willingly. *See Martin v. Dewsnup*, No. 6:11-cv-06420-AC, 2015 WL 13730889, *17 (D. Or. Dec. 30, 2015) (holding that when plaintiff refused orders to uncover his door and to submit to restraints, the cell-extraction team had "no reason to believe he would comply with their orders once officers opened his cell door"). Plaintiff showed additional aggressive behavior by "kick[ing] the shield away before the electronics could even make contact with him," Miller Decl. ¶ 6, ECF #37, and even "continued to resist staff until they were able to restrain his wrists and ankles." Young Decl. ¶ 9, ECF #39.

Finally, defendants' efforts to temper the force that was used cannot go unnoticed. Defendants made many requests for plaintiff to submit himself to restraints before entering the cell. *Id.* ¶¶ 5-9. After Sgt. Cochell gave plaintiff directives to remove the mattress from the door and back up to restraints, he put plaintiff on notice that officers would employ the electronic shield if he did not submit. Miller Decl. ¶ 6, ECF #37. Defendants took into account plaintiff's medical history when they chose to use the electronic shield rather than chemical spray. Young Decl. ¶ 6, ECF #39 ("Nursing staff reported that [plaintiff] is asthmatic."). And in effort to minimize risk to all parties, defendants repeatedly told plaintiff to stop resisting, which he refused to do until restrained. Miller Decl. ¶ 6, ECF #37. After the incident, defendants put plaintiff on "Full Suicide Watch," further demonstrating their attention to plaintiff's condition. Officer Jacobs Interoffice Memo, ECF #39, at 19.

In sum, considering the urgency of plaintiff's suicide attempt and his obstructive behavior, defendants' carefully planned and executed use of force was "applied in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6. Further, defendants' efforts to provide plaintiff with medical attention and mitigate the amount of harm demonstrates that their actions were not done "maliciously and sadistically for the very purpose of causing harm," and therefore does not meet the level of mental culpability necessary to make out an Eighth Amendment violation.

B.  **Failure to Intervene and Failure to Train**

Plaintiff's second and third claims assert failure to intervene during the use of excessive force and failure to train correctional officers in proper procedures. *See Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) ("[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene."); *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (recognizing that the inadequacy of police training may serve as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (2014)). Because the cell extraction team acted with a reasonable amount of force, the named defendants had no reason to intervene, and their training is not at issue here.[4]

//
//
//

---

[4] Defendants also assert qualified immunity. However, it is unnecessary to reach that issue as there is no Eighth Amendment violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding that "the initial inquiry" in the qualified immunity analysis is whether "the facts alleged show the officer's conduct violated a constitutional right").

**ORDER**

For the reasons set forth above, defendants' motion for summary judgment (ECF #36) is GRANTED and this case is DISMISSED with prejudice.

DATED August 8, 2019.

                                                /s/ Youlee Yim You
                                           Youlee Yim You
                                           United States Magistrate Judge